490 So.2d 700 (1986)
STATE of Louisiana, Respondent,
v.
Jimmie L. MYERS, Relator.
No. 17948-KW.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Writ Denied September 26, 1986.
*701 Rankin, Yeldell, Herring & Katz (A Professional Law Corporation) by Charles E. Herring, Jr., Bastrop, for relator.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty. by John P. Spires, Bastrop, for respondent.
Before HALL, MARVIN and FRED W. JONES, JJ.
FRED W. JONES, Judge.
The defendant Myers was charged with DWI, first offense (La.R.S. 14:98). Myers filed a motion to suppress the results of field sobriety tests, oral statements made to the arresting officer at the arrest scene, and the result of a blood test, contending that the stop of his vehicle by the officer was illegal.
The following stipulation was entered into and made a part of the record at the hearing on the motion to suppress:
On the morning of June 17, 1985, the Louisiana State Police received a teletype from the Police Department of Crossett, Arkansas. The Crossett Police indicated that a person had reported to them that a gray 1985 Lincoln Continental had struck *702 a traffic sign in Crossett and that it was believed the vehicle was heading toward Louisiana. The Louisiana State Police were asked to keep a lookout for the vehicle and were requested to stop and get the name and address of the driver. The report did not state the license number of the vehicle, but did indicate that the vehicle carried a temporary license tag.
Around 8:30 a.m. on the same date, Louisiana State Trooper Danny McGrew spotted a 1985 gray Lincoln Continental with a temporary license tag in the window traveling south on Highway 139. The trooper followed the vehicle for approximately two (2) miles. The driver did nothing to give the officer any reason to stop the vehicle. Based solely upon the teletype from the Crossett Police Department, the defendant's vehicle was stopped by Trooper McGrew.
As a result of information gained after the stop, Myers was charged with DWI.
After the trial court denied the motion defendant entered a Crosby guilty plea and, after sentence, applied to this court for a writ of review. We granted the writ to consider his contentions that the motion to suppress should have been granted by the trial judge because (1) the stop of his vehicle was not based upon reasonable cause and (2) even if based upon reasonable cause, the stop violated the U.S. Constitution since stops permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967) do not apply to completed misdemeanors.

REASONABLE CAUSE FOR STOP
The first issue to be resolved is whether the details of the anonymous telephone tip to the Crossett, Arkansas police provided the requisite reasonable cause for the investigatory stop of which defendant complains.
The 4th and 14th Amendments to the United States Constitution, as well as Louisiana Constitution Article 1, § 5, protect against unreasonable seizures. State v. Hogan, 403 So.2d 1210 (La.1981). An investigatory stop on the street constitutes a "seizure", even though the purpose of the stop is limited and resulting detention brief. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); State v. Bolden, 380 So.2d 40 (La.1980).
Reasonable cause for an investigatory stop is something less than probable cause. Nevertheless, the officer must have articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn from those facts, are sufficient to provide reasonable grounds to suspect the party of past criminal activity. The existence of reasonable cause must be determined under the facts of each case by ascertaining whether the officer had sufficient knowledge of circumstances which would justify an infringement upon the individual's right to be free of governmental interference. Brown, supra; Hogan, supra; State v. Miller, 440 So.2d 867 (La. App. 2d Cir.1983).
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. State v. Bickham, 404 So.2d 929 (La.1981). If an officer knows that a crime has been committed and has information which gives a reasonable basis to suspect a given person of having committed the offense, he is justified in making an investigatory stop. State v. Square, 433 So.2d 104 (La.1983).
Reasonable cause for a stop need not be based on the officer's personal observation. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). An anonymous tip may justify an investigatory stop. State v. Jernigan, 377 So.2d 1222 (La.1979). The rigid "two-prong test" under Aquilar and Spinelli for assessing the reliability of an informant's tip has been abandoned and a "totality of the circumstances" approach is now used in its place. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
If a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the *703 wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it. U.S. v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 676, 83 L.Ed.2d 604 (1985).
The teletype here indicated that the driver of a gray 1985 Lincoln Continental with temporary license tags had committed an offense in Crossett, Arkansas. The teletype had been issued the morning of June 17, 1985. At 8:30 a.m. on the same morning, a vehicle matching the description given in the teletype was spotted by Trooper McGrew. The description of the automobile was highly particularized and rendered its occupant the legitimate subject of investigation. United States v. Longmire, 761 F.2d 411 (7 Cir.1985).
The vehicle was traveling in the correct direction to corroborate the source of the teletype information. The route from Crossett to the end of Highway 139 in Monroe, Louisiana is only 50 miles.[*] The chance of another gray 1985 Lincoln Continental with temporary license tags being on the same route was remote.
The stop that in fact occurred was no more intrusive than necessary. Taking the license number of the vehicle would not have been sufficient since identification of the owner of the vehicle would not prove the identity of the driver. The stop made was for the limited express purpose of obtaining the name and address of the driver.
For the reasons stated, we conclude that the stop of defendant's vehicle was based upon reasonable cause.

CONSTITUTIONAL ISSUE
We now face the question left open in Hensley, suprawhether the federal and state constitutions, as well as La.C.Cr.P. Article 215.1, allow an investigative stop of an automobile founded upon a teletype report of a completed misdemeanor.
The proper way to identify the precise limits on investigatory stops to investigate past criminal activity is to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes. That test, which is grounded in the standard of reasonableness embodied in the 4th Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion. Hensley, supra.
The Supreme Court in Hensley indicated the factors in the balance may be somewhat different when a stop to investigate past criminal activity is involved rather than a stop to investigate ongoing criminal conduct. After pointing out a few of these differences, the court stated:
Despite these differences, where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes. (emphasis ours) 105 S.Ct. p. 681.
*704 The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal. In an era when criminal suspects are increasingly mobile and prone to flee across jurisdictional boundaries, this is a matter of common sense.
In Blaisdell v. Commissioner of Public Safety, 375 N.W.2d 880 (Minn.App.1985), the court held that a stop of a vehicle to investigate a completed misdemeanor violated the 4th Amendment of the United States Constitution. A police officer was informed by the clerk at a service station that a car on the premises had been involved in a "no-pay" theft. The officer followed the vehicle but did not observe any driving violations or any unusual or careless driving. The officer then stopped the vehicle.
The Blaisdell court emphasized the disparate treatment accorded felonies and misdemeanors by the Minnesota legislature. A Minnesota officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. Minn.Stat. § 629.34 (1984). The court considered this to be:
... a legislative recognition that the public concerns served by warrantless misdemeanor arrests are in some degree outweighed by concerns for personal security and liberty. At the very least, because misdemeanor offenses are considered less serious crimes than felonies and because police cannot arrest for misdemeanors unless the offense is committed in their presence, the public concerns served by seizures to investigate past misdemeanors are less grave than the concerns served by seizures to investigate past felonies and gross misdemeanors.
The Louisiana legislature has not recognized or made such a distinction. A Louisiana law enforcement officer may stop a person in a public place whom he reasonably suspects has committed an offense and may demand from him his name, address, and an explanation of his actions. La.C.Cr.P. Article 215.1(A). Offense is defined to include a felony or a misdemeanor. La.C.Cr.P. Article 933.
Even if the applicable laws were similar, we choose not to follow such a broad holding. The Blaisdell court admitted:
While we can envision situations where an automobile stop could advance the public interest to a greater degree than the present stop, we do not believe this will arise in a misdemeanor context with sufficient frequency to appreciably advance the public interest in solving past crimes.
The case before us is just such a situation. We have a scenario apparently involving a driver who left the scene of an accident. Damage was caused, perhaps intentionally, to government property. At the very least, we are dealing with an impaired or non-attentive driver who might have been dangerous to other traffic. The safety of the motoring public and the potential capacity of the automobile to inflict serious damage provides a fairly strong government interest.
Blaisdell is distinguishable on the facts as well as the law. The gas theft there occurred two months before the stop. The court pretermitted the question of when an offense becomes a "completed" crime, but cautioned:
... courts should be hesitant to declare criminal conduct which occurred in the very recent past (such as the same day of the stop) to be "completed".
The above described distinctions tilt the balancing test in favor of allowing an investigatory stop for the limited purpose of obtaining the name and address of the driver of a vehicle.
Consequently, we do not find that the stop of defendant's automobile was forbidden either by the United States Constitution or by our state constitution.
Decree
For the reasons detailed, we conclude that the trial court correctly denied defendant's *705 motion to suppress. Therefore, his conviction and sentence are affirmed.
NOTES
[*] For authorization to take judicial notice of this fact see La.R.S. 15:422(6); State v. Jackson, 308 So.2d 265 (La.1975).